Andrew BROWN (95–A–3248), Petitioner,

v.

Hans WALKER, Superintendent of Auburn Correctional Facility, Respondent.

Nos. 00–CV–5191 (JBW), 03–MISC–0066 (JBW).

United States District Court, E.D. New York.

July 23, 2003.

Joyce Slevin, The Office of the District Attorney, Kings County, Brooklyn, NY, for Respondent.

## MEMORANDUM, JUDGMENT & ORDER

WEINSTEIN, Senior District Judge.

The petition for a writ of habeas corpus is denied. No hearing on this matter is necessary. This memorandum briefly addresses petitioner's claims.

### I. Facts and Procedural History

This case involved the theft of money from both a car service driver, Wilson Odigie, and a fellow passenger, Patrick Thomas. In June 1994, Thomas was seated in the front passenger seat and the defendant was riding in the seat behind Odigie. At some point in the ride, petitioner pointed a gun at Thomas and stole a cellular phone and some money from him. He then pointed the gun at Odigie and took money from him. Petitioner was apprehended by the police about fifteen minutes later along with some money and the cellular phone.

In February 1995, petitioner was convicted after a jury trial of two counts of robbery in the first degree. He was sentenced in April 1995 to concurrent terms of imprisonment of a minimum of 10 years and a maximum of 20 years.

Petitioner's conviction and sentence were affirmed by the Appellate Division. Leave to appeal to the New York Court of Appeals was denied. Petitioner filed a pro se motion to vacate judgment that was denied by the trial court. Leave to appeal was denied by the Appellate Division. Petitioner also filed an application for a writ of error coram nobis that was denied by the Appellate Division.

In the instant application for a writ of habeas corpus, petitioner claims primarily that his trial counsel was ineffective for (1) failing to investigate his competency to stand trial; (2) failing to request that he be examined as to his competence pursu-

ant to Article 730 of the New York Criminal Procedure Law; and (3) failing to contest the findings of a pre-sentence psychiatric examination.

Construing petitioner's contentions liberally, *see Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), he also claims trial counsel was ineffective for failing "to make numerous objections"; failing to object to *Brady* and *Rosario* violations by the prosecution; failing to object to repeated hearsay testimony; failing to protect petitioner from "inferences raised by the People's frequent leading questions"; failing to object to the prosecutor's comment that the State had no obligation to prove that petitioner used a gun in order for the jury to convict him of first degree robbery; and failing to present the affirmative defense that the gun used in the robbery was not loaded and was inoperable. Petitioner also at points in his papers claims that he was denied expert assistance at trial pursuant to *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), and that his sentence of 10 to 20 years in prison was not authorized by statute

## II. AEDPA

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

An "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." *Sellan v. Kuhlman,* 261 F.3d 303, 313 (2d Cir.2001) (quoting *Aycox v. Lytle,* 196 F.3d 1174, 1178 (10th Cir.1999)). Under the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (O'Connor, J., concurring and writing for the majority in this part). Under the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S.Ct. 1495. "[F]ederal law, as determined by the Supreme Court, may as much be a generalized standard that must be followed, as a bright-line rule designed to effectuate such a standard in a particular context." *Overton v. Newton,* 295 F.3d 270, 278 (2d Cir.2002). Determination of factual issues made by a state court "shall be presumed to be correct," and the applicant "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## III. Exhaustion

■ In the past, a state prisoner's federal habeas petition had to be dismissed if the prisoner did not exhaust available state remedies as to any of his federal claims. *See Rose v. Lundy,* 455 U.S. 509, 522, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). "This exhaustion requirement is ... grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights."

*Coleman v. Thompson,* 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The exhaustion requirement requires the petitioner to have presented to the state court "both the factual and legal premises of the claim he asserts in federal court." *Daye v. Attorney General,* 696 F.2d 186, 191 (2d Cir.1982) (en banc).

■■■ Pursuant to AEDPA, a district court may now, in its discretion, *deny* on the merits habeas petitions containing unexhausted claims—so-called "mixed petitions." *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state."). In addition, the state may waive the exhaustion requirement, but a "State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." *Id.* § 2254(b)(3); *see also Ramos v. Keane,* No. 98 CIV. 1604, 2000 WL 12142, at *3–4 (S.D.N.Y. 2000) (state's failure to raise exhaustion requirement does not waive the issue).

## IV. Procedural Bar

■■■ A federal habeas court may not review a state prisoner's federal claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule, "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546.

■■■ If a state court holding contains a plain statement that a claim is procedurally barred then the federal habeas court may not review it, even if the state court also rejected the claim on the merits in the

alternative. *See Harris v. Reed,* 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) ("a state court need not fear reaching the merits of a federal claim in an *alternative* holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision).

■■■ When a state court "uses language such as 'the defendant's remaining contentions are either unpreserved for appellate review or without merit,' the validity of the claim is preserved and is subject to federal review." *Fama v. Comm'r of Corr. Services,* 235 F.3d 804, 810 (2d Cir. 2000). When a state court "says that a claim is 'not preserved for appellate review' and then ruled 'in any event' on the merits, such a claim is not preserved." *Glenn v. Bartlett,* 98 F.3d 721, 724–25 (2d Cir.1996).

## V. Ineffective Assistance of Counsel

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. This right to counsel is "the right to *effective* assistance of counsel." *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) (emphasis added). The Supreme Court has explained that in giving meaning to this requirement we must be guided by its purpose—"to ensure a fair trial"—and that therefore the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to prevail on a Sixth Amendment claim, a petitioner must prove both that counsel's representation "fell below an objective standard of reasonableness" mea-

sured under "prevailing professional norms," *id.* at 688, 104 S.Ct. 2052, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, 104 S.Ct. 2052. *See also Wiggins v. Smith*, 539 U.S. ——, —— – ——, 123 S.Ct. 2527, —— – ——, 156 L.Ed.2d 471, slip op. at 8–10 (2003); *United States v. Eyman*, 313 F.3d 741, 743 (2d Cir.2002). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

■ The performance and prejudice prongs of *Strickland* may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Id.* at 697, 104 S.Ct. 2052. In evaluating the prejudice suffered by a petitioner as a result of counsel's deficient performance, the court looks to the "cumulative weight of error" in order to determine whether the prejudice "reache[s] the constitutional threshold." *Lindstadt v. Keane*, 239 F.3d 191, 202 (2d Cir.2001). The court must also keep in mind that "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 696, 104 S.Ct. 2052. "The result of a [criminal] proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Purdy v. Zeldes*, 337 F.3d 253, 260 (2d Cir.2003) (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052). Ineffective assistance may be demonstrated where counsel performs competently in some respects but not in others. *See Eze v. Senkowski*, 321 F.3d 110, 112 (2d Cir.2003).

■ As a general matter, strategic choices made by counsel after a thorough investigation of the facts and law are "virtually unchallengeable," though strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91, 104 S.Ct. 2052. Counsel, in other words, "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691, 104 S.Ct. 2052. Where counsel fails to make a reasonable investigation that is reasonably necessary to the defense, a court must conclude that the decision not to call an expert cannot have been based on strategic considerations and will thus be subject to review under *Strickland's* prejudice prong. *See Pavel v. Hollins*, 261 F.3d 210, 223 (2d Cir.2001) (counsel ineffective in a child sexual abuse case where his failure to call a medical expert was based on an insufficient investigation); *Lindstadt*, 239 F.3d at 201 (same). The Court of Appeals for the Second Circuit has recently gone so far as to imply that all of counsel's significant trial decisions must be justified by a sound strategy—a significant raising of the bar that would appear to require an unrealistic degree of perfection in counsel. *See Eze*, 321 F.3d 110, 136 (remanding to district court for factual hearing because it was "unable to assess with confidence whether strategic considerations accounted for ... counsel's decisions").

There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052.

■ Each factual claim made in support of an allegation of ineffective assistance of counsel must be fairly presented to a state court before a federal habeas

court may rule upon it. *See Rodriguez v. Hoke,* 928 F.2d 534, 538 (2d Cir.1991) (dismissing petition as unexhausted where petitioner's claim of ineffective assistance of counsel alleged more deficiencies before the habeas court than were presented to the state court, because "[t]he state courts should have been given the opportunity to consider all the circumstances and the cumulative effect of all the claims as a whole" (quotation omitted)). Where an additional factual claim in support of the ineffective-assistance allegation merely "supplements" the ineffectiveness claim and does not "fundamentally alter" it, dismissal is not required. *Caballero v. Keane,* 42 F.3d 738, 741 (2d Cir.1994).

## VI. Certificate of Appealability

This opinion complies with *Miranda v. Bennett,* 322 F.3d 171, 175–77 (2d Cir. 2003), and Rule 52 of the Federal Rules of Civil Procedure. No other issue open to consideration by this court has merit. *See Sumner v. Mata,* 449 U.S. 539, 548, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981) ("a court need not elaborate or give reasons for rejecting claims which it regards as frivolous or totally without merit").

A certificate of appealability may be granted with respect to any one of petitioner's claims only if petitioner can make a substantial showing of the denial of a constitutional right. Petitioner has a right to seek a certificate of appealability from the Court of Appeals for the Second Circuit. *See* 28 U.S.C. § 2253; *Miller–El v. Cockrell,* 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

## VII. Analysis of Claims

Petitioner primarily claims that trial counsel was ineffective for failing to investigate his competency to stand trial; for failing to request that he be examined as to his competence pursuant to Article 730 of the New York Criminal Procedure Law; and for failing to contest the findings of a pre-sentence psychiatric examination. Although the trial court appeared to deny these claims on procedural grounds—because they were matters that could have been raised on direct appeal—it is not clear whether the denial was in fact for procedural reasons. The trial court found the claim, at any rate to be meritless. That ruling was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent.

■■■ In support of his claim of ineffective assistance based on the failure to press his psychological incompetence claim, petitioner notes that before trial he was housed in the psychiatric dorm at Rikers Island, that he was on suicide watch, that he fashioned a noose with suicidal intent, and that counsel was informed that he had a history of psychiatric and substance abuse problems. He has submitted exhibits tending to verify some of these claims. For purposes of deciding the instant petition, all of these statements are deemed accurate.

■■■ It is well-settled that the "criminal trial of an incompetent defendant violates due process," *Medina v. California,* 505 U.S. 437, 453, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992), and that this "prohibition is fundamental to an adversary system of justice," *Drope v. Missouri,* 420 U.S. 162, 172, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). In determining whether a criminal defendant is competent to stand trial, the trial court must consider whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him. *Dusky v. United States,* 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).

Petitioner's demonstration that he suffers from psychiatric problems, standing alone, does not establish either that he was incompetent to stand trial or that his law-

yer should have taken more steps to determine his competency. There is no indication in the record that petitioner did not understand the nature of the legal proceedings to which he was subjected or that he was incapable of communicating intelligently with his attorney. To the contrary, petitioner's on-the-record colloquies with the trial judge evince an understanding of the proceedings. *See* Trial Tr. at 3–5, 141–45, 208–11. His attorney described having engaged in lengthy legal discussions with petitioner. *See id.* at 190–91. And the trial court specifically stated, after petitioner disrupted the proceedings before the jury,

> So the record is clear, I do believe that Mr. Brown's actions have been, in all respects been entirely deliberate. I certainly don't find anything that he's done that indicates a lack of mental competence or understanding of what's going on. In fact, what he wrote to this Court was he had an argument over, in essence, a very subtle point of who controls the right to control the jury and, clearly, he has, and I've seen him in very animated and very detailed conversations with his counsel in all respects, both in terms of jury selection and in terms of questions to be asked witnesses. He followed the proceedings very intently, and he has indicated in all respects an entire comprehension of what's going on. What his actions were and what he chose to do I find to have been totally deliberate.

*Id.* at 424, 80 S.Ct. 788. In addition, the trial court on its own motion ordered a psychiatric examination of petitioner prior to sentencing. The report, which this court has read, indicated that petitioner was found fit to proceed. *See* Sentencing Tr. at 2.

There is no indication in the record that petitioner was incompetent to stand trial. All indications were to the contrary, petitioner's psychiatric problems notwithstanding. There was no reasonable cause to believe, either before trial or after, that petitioner was incapable of understanding the proceedings or assisting in his defense. Trial counsel also had no reason to contest the findings in the court-ordered psychiatric report. It was reasonable for the trial court to conclude, in its denial of petitioner's motion to vacate judgment, that trial counsel was not ineffective for failing to pursue the issue of her client's incompetency further.

At one point in his papers petitioner states that trial counsel "should have conducted research and investigation and prepare[d] a valid insanity defense." Reply Pet'n for Writ of Habeas Corpus at 3. Under New York law, "it is an affirmative defense that when the defendant engaged in the proscribed conduct, he lacked criminal responsibility by reason of mental disease or defect. Such lack of criminal responsibility means that at the time of such conduct, as a result of mental disease or defect, he lacked substantial capacity to know or appreciate either: 1. The nature and consequences of such conduct; or 2. That such conduct was wrong." N.Y. Penal Law § 40.15. It would appear that petitioner is confusing the issue of his competence to stand trial with the issue of his sanity at the time of the commission of the crime for which he was charged. The trial court, in denying petitioner's motion to vacate judgment, understood petitioner to be pressing only his competency claim. Petitioner did not question the court's understanding of his claim in his application for leave to appeal the denial of his motion to vacate judgment. To the extent petitioner now claims that counsel failed to pursue an insanity defense, it is unclear whether review in this court should be *de novo* or should proceed under the deferential standards of AEDPA, because it is unclear whether the state courts have adjudicated the claim—or, indeed, whether the claim was ever raised in state court.

■ At any rate, even when reviewed *de novo* the claim is without merit. Petitioner, whom trial counsel and the trial court deemed competent to assist in his own defense, does not contend that he requested counsel to pursue an insanity defense. The mere fact that counsel was aware that petitioner suffered from psychiatric problems is insufficient to establish that she should have devoted her time to pursuing an affirmative defense rather than seeking to otherwise test the State's case on the elements of the crime—two essentially incompatible defenses. Petitioner has offered the court no reason to believe that counsel's decision to limit investigation into an insanity defense was anything but a reasonable professional judgment made by an attorney who otherwise vigorously represented her client. Petitioner's discussion of his suicidal ideations and his visits to the psychiatric ward of Riker's Island shed little light on his tacit claim that at the time of the crime he failed to appreciate either the nature and consequences of his conduct or that his conduct was wrong. (Petitioner has not conceded, at least before this court, that he actually engaged in the criminal conduct for which he was convicted.) There is no substantial probability that the verdict would have been different had petitioner's counsel engaged in further investigation into an insanity affirmative defense. Even if counsel's performance were deficient, petitioner was not prejudiced by her performance in this regard and there was therefore no *Strickland* violation. Habeas relief on this claim is not warranted.

■ Petitioner claims that trial counsel was ineffective for failing "to make numerous objections"; for failing to object to *Brady* and *Rosario* violations by the prosecution; for failing to object to repeated hearsay testimony; and for failing to protect petitioner from "inferences raised by the People's frequent leading questions."

The *Brady/Rosario* ineffectiveness claim does not appear to have been presented to the state courts. Petitioner does not support that portion of the claim with any argument or even with an explanation of what materials the state failed to turn over to the defense. Review of the trial record reveals no such prosecutorial misconduct, intentional or not. That portion of the ineffectiveness claim is patently meritless.

■ Petitioner raised the remainder of this ineffectiveness claim on direct appeal, where it was deemed meritless by the Appellate Division. Petitioner primarily complains about the relative lack of trial skill displayed by defense counsel, who failed to object to about a dozen hearsay statements that prosecution witnesses testified about and whose own cross-examination were allegedly inept. *See* Br. [on Direct Appeal] for Appellant at 24–32. Itemization in this memorandum of the claims is unnecessary. There is no reasonable probability that the result of petitioner's trial would have been different even if all of the contested hearsay testimony had been deemed inadmissible by the trial court upon an objection from defense counsel. Much of it was inconsequential and several of the statements were later testified to directly by the declarants. In light of the overwhelming evidence of petitioner's guilt, he was not denied a fair trial because of the putative hearsay statements and he was not prejudiced by counsels alleged failures in this respect.

Petitioner claims that trial counsel was ineffective for failing to object to the prosecutor's comment that the State had no obligation to prove that petitioner used a gun in order for the jury to convict him of first degree robbery. Petitioner's account of the prosecutor's comments are inaccurate. During voir dire the prosecutor told the prospective jurors that a gun was used in the case but it had not been recovered.

He then stated, "What I need to know from you is, is whether regardless of the evidence that you hear in this case, regardless of what you hear from the witness stand, regardless of the witnesses that you see, is there someone that's going to require me to produce the gun in order to convict? In other words, I don't care what the evidence is, I am not convicting unless I see that gun?" Trial Tr. at 200–01. The prosecutor did not state that the prosecution could convict petitioner of first degree robbery without proving that he had used a gun. There was no reason for defense counsel to object, and her failure to do so was therefore not ineffective. Habeas relief on this ground is not warranted.

■ Petitioner claims that his attorney was ineffective for failing to present the affirmative defense that the gun used in the robbery was not loaded and was inoperable. *See* N.Y. Penal Law § 160.15(4). This claim is meritless. The gun that witnesses testified to observing petitioner brandish was never recovered. Petitioner's attorney had no ground to argue that the firearm was unloaded or inoperable. It served its purpose of facilitating the robbery by placing the victims in fear. Habeas relief is not warranted on this ground.

■ Petitioner claims that he was denied expert assistance at trial pursuant to *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). This claim is not exhausted but is meritless. Petitioner points to no portion of the record in which he or his counsel made such a request. The trial court's failure to provide such assistance was therefore not error. Habeas relief on this claim is not warranted.

The very nature of this common form of robbery and the way it was conducted belies an insanity defense. No reasonable jury would have credited it.

Finally petitioner claims in a letter of January 3, 2001, that his sentence of 10 to 20 years in prison was not authorized by statute. The claim is unexhausted but meritless. Contrary to petitioner's contention, the maximum range of sentence for a second felony offender convicted of a "B felony" in New York was not 7–1/2 to 15 years in prison, but rather 12–1/2 to 25 years. *See* N.Y. Penal Law § 70.06(3)(b), (4)(b). Habeas relief is not warranted on this claim.

VIII. Conclusion

The petition for a writ of habeas corpus is denied.

No certificate of appealability is granted with respect to any of petitioner's claims, petitioner having made no substantial showing of the denial of a constitutional right. Petitioner has a right to seek a certificate of appealability from the Court of Appeals for the Second Circuit. *See* 28 U.S.C. § 2253; *Miller–El v. Cockrell,* 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

SO ORDERED.