**Keith GILLIS, Petitioner,**

v.

**Ernest EDWARDS, Superintendent, Otisville Correctional Facility Respondent.**

**No. 9:02 CV 0913 NPM.**

United States District Court, N.D. New York.

Aug. 10, 2006.

Keith Gillis, Petitioner, Pro Se, Fishkill Correctional Facility, Beacon, for the Petitioner.

Hon. Eliot Spitzer, Office of Attorney General, State of New York, The Capitol, Albany, Gerald J. Rock, Esq., Jeanette Morick, Esq., Assistant Attorneys General, for the Respondent.

## MEMORANDUM–DECISION
## AND ORDER

MCCURN, Senior District Judge.

## I. Background

### A. State Court Proceedings

According to the testimony adduced at trial, at approximately 8:30 p.m. on July 7, 1995, Juanita Gillis ("J.Gillis"), who at that time was the wife of petitioner, *pro se* Keith Gillis, noticed smoke coming from what she believed to be the kitchen area in her home on New Scotland Avenue in Albany, New York. *See* Transcript of Trial of Keith Gillis (6/9/97) ("Trial Tr.") at 272–73. She called the fire department to extinguish the blaze, Trial Tr. at 273, and after firefighters arrived at the scene they discovered smoke coming from the basement of the home. Trial Tr. at 274.

Robert Cook of the Albany Fire Department was one of the individuals who responded to the call regarding the fire at J. Gillis' home. Trial Tr. at 105–06. Upon arriving at that residence, he began opening windows to assist fellow firefighters in their efforts to extinguish the blaze. Trial Tr. at 106. As he was opening up a basement window of the home, Cook observed what he believed to be a pile of clothes burning in the basement. Trial Tr. at 106–07. Soon thereafter, he heard "a crack or a pop type sound." Trial Tr. at 109. Around that time, J. Gillis heard someone exclaim: "get back, get back, he has a gun." Trial Tr. at 274. Cook then began to distance himself from the building, and as he looked around the home he noticed a woman, who was later identified as Laura Mallery, lying on the ground. Trial Tr. at 110. Cook, who in addition to being a firefighter is also a paramedic,

went to Mallery to assist her, and when the two met she informed him that she was experiencing severe pain in her left leg. Trial Tr. at 110–11. Soon thereafter, Cook himself felt a burning sensation in his left leg, and when he heard another gunshot, he believed that he had been shot in his leg. Trial Tr. at 111. Other firefighters and a passerby soon thereafter dragged Cook and Mallery to the safety of a nearby garage. Trial Tr. at 111–12.

Albany Police Officer Brian Gregan, who had been directed to respond to the developing situation on New Scotland Avenue, approached Gillis, who was underneath the porch of his home. Trial Tr. at 143–46, 274. Officer Gregan ordered Gillis to drop his weapon. Trial Tr. at 144. Gillis instead fired two more shots in the direction of the officer. Trial Tr. at 144. Officer Gregan then requested that additional officers be dispatched to the residence, Trial Tr. at 145, and additional law enforcement agents soon arrived at the home. Trial Tr. at 145–46. Albany Police Officer James Turley next approached Gillis and ordered him to drop his weapon. Trial Tr. at 173–74.[1] Gillis refused, and began inching his way from underneath the porch. Trial Tr. at 176–78. Officer Turley then attempted to apprehend Gillis, and as the officer began pulling the rifle out of Gillis' hands, he bit the officer in his buttocks. Trial Tr. at 178. Other law enforcement agents responded to Officer Turley's request for assistance, and Gillis was placed under arrest and taken to Albany Medical Center for evaluation.[2] Trial Tr. at 179.

While at that facility, Gillis was placed on a ventilator and diagnosed as suffering from a cocaine and phencyclidine ("PCP")

---

1. Officer Turley observed that Gillis was naked at that time. Trial Tr. at 174.

2. During the course of arresting Gillis, Albany Police Officer Timothy Torrain sustained a laceration to his left elbow that was caused by Gillis. Trial Tr. at 200.

overdose. Trial Tr. at 423. Jennie Flynn, a registered nurse employed by Albany Medical Center at the time, testified that once Gillis was taken off of the ventilator he began "pleading with [Flynn] and begging [Flynn] to call the people that he had shot and apologize to them for him." Trial Tr. at 425. Despite the fact that Flynn informed Gillis that she could not do as he requested, Gillis nevertheless continued:

> begging and pleading with [Flynn] to call the police, to apologize and call everybody that was involved that night, to [tell them] that he didn't mean to do it, that it was the drugs, that he's not like that, that he's sorry.

Trial Tr. at 425.[3]

As a result of the foregoing, on August 15, 1995, an Albany County grand jury returned an indictment against Gillis. *See* Respondent's Appendix on Appeal ("Resp.App.") at RA2–11 ("Indictment"). In that accusatory instrument, Gillis was charged with attempted murder in the first degree; second degree attempted murder, first and second degree assault and the misdemeanor offense of resisting arrest. *See* Indictment, Counts One through Ten. Beginning on June 9, 1997, Gillis was tried before a jury on the foregoing charges in Albany County Court with County Court Judge Thomas A. Breslin presiding.

After the parties presented their closing arguments and the trial court instructed the jury, the jury began its deliberations. Following several requests by the jury for the reading back of testimony and clarifications regarding the court's instructions, Trial Tr. at 911–52, the jury declared that it had reached a verdict in the case. In its verdict, the jury acquitted Gillis of the attempted murder counts in the Indict-

ment but convicted him of the following charges: i) two counts of second degree assault as lesser included offenses of the attempted murder charges; ii) one count of first degree assault; iii) two counts of second degree assault arising out of his interaction with law enforcement agents as they attempted to arrest Gillis on July 7, 1995; and iv) resisting arrest. *See* Trial Tr. at 952–65.

On August 5, 1997, the parties appeared before Judge Breslin for sentencing. That court sentenced Gillis as a second felony offender to indeterminate terms of imprisonment of seven and one half to fifteen years imprisonment on his first degree assault conviction, three and one-half to seven years imprisonment on his second degree assault convictions, and one year imprisonment attributable to his resisting arrest conviction. *See* Transcript of Sentencing in *People v. Gillis* (8/5/97) at 24–26. In the aggregate, Gillis was ordered to serve between ten to twenty years in prison for his crimes. Petition at ¶ 3.

Gillis appealed his convictions and sentences to the New York State Supreme Court, Appellate Division, Third Department. With the assistance of counsel, Gillis argued in his direct appeal that: i) he was denied the effective assistance of trial counsel; ii) his defense of mental disease or defect was established by a preponderance of the evidence; iii) the prosecution failed to establish "intent" on the part of Gillis; iv) the People failed to prove that Gillis was guilty of the second degree assault of Cook; and v) the verdict should be overturned and Gillis be directed to undergo a mental health examination. *See* Appellant's Brief on Appeal ("App.Br.") at 1–18; *see also* Gillis' *Pro Se* Supplemental

---

**3.** Flynn testified that when he made those statements, Gillis was "awake and alert" and "completely oriented". Trial Tr. at 427.

Brief at 1–23. That appeal was opposed by Assistant District Attorney Kimberly Mariani, Esq. in her brief dated December 18, 2000, and on March 8, 2001, the Third Department unanimously affirmed Gillis' convictions and sentences. *People v. Gillis*, 281 A.D.2d 698, 721 N.Y.S.2d 690 (3d Dept.2001). New York's Court of Appeals subsequently denied Gillis leave to appeal that decision of the Appellate Division by order dated August 8, 2001. *People v. Gillis*, 96 N.Y.2d 918, 732 N.Y.S.2d 635, 758 N.E.2d 661 (2001).

### B. *Proceedings in this Court*

Gillis commenced this proceeding, *pro se*, on July 12, 2002. *See* Petition (Dkt. No. 1). In that pleading, petitioner argues that: i) he established, by a preponderance of the evidence, that he suffered from a mental disease or defect which necessitated his acquittal on all charges brought against him; ii) his trial counsel failed to investigate the facts relevant to Gillis' defense to the charges against him; iii) defense counsel did not properly present Gillis' defense of mental disease or defect; and iv) the prosecutor failed to sustain its burden of proof as to the charges brought against Gillis which required proof that he intended his actions on the day of the shootings. *See* Memorandum of Law in Support of Petition (Dkt. No. 2) ("Supporting Mem.") at 11–26.[4]

By Order dated July 29, 2002, the respondent was ordered to file a response to Gillis' petition. On February 3, 2003, the Office of the Attorney General for the State of New York, acting on respondent's behalf, filed an answer together with a memorandum in opposition to Gillis' peti-

tion. Dkt. Nos. 7–8. In his opposing memorandum, respondent argues that none of Gillis' claims have merit. *See* Dkt. No. 8.

## II. *DISCUSSION*

### A. *Applicable Standard of Review*

In *Rodriguez v. Miller*, 439 F.3d 68 (2d Cir.2006), the Second Circuit observed that under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> a federal court may award habeas corpus relief with respect to a claim adjudicated on the merits in state court only if the adjudication resulted in an outcome that: (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

*Rodriguez*, 439 F.3d at 73 (quoting 28 U.S.C. § 2254(d)); *see also DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir.2005); *Miranda v. Bennett*, 322 F.3d 171, 177–78 (2d Cir.2003). The AEDPA also requires that in any such proceeding "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also DeBerry*, 403 F.3d at 66; *Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir.2001).

 "A state court adjudication is 'contrary to' clearly established federal law

---

4. In his petition, Gillis does not detail the various grounds upon which his request for habeas relief is based but instead refers this Court to his supporting memorandum for both the grounds he asserts herein as well as the factual and legal bases for such claims.

*See* Petition; Supporting Mem. Therefore, this Court will cite to the supporting memorandum of law filed by Gillis, rather than his habeas petition, when referring to the grounds upon which his request for federal habeas intervention is based.

only if 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'" *Rodriguez*, 439 F.3d at 73 (quoting *Williams v. Taylor*, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Under the "unreasonable application" clause of the AEDPA, a federal habeas court may only grant the writ where the state court's decision "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Rodriguez*, 439 F.3d at 73 (quoting *Williams*, 529 U.S. at 413, 120 S.Ct. 1495). A federal court engaged in habeas review is not charged with determining whether the state court's determination was merely incorrect or erroneous, but instead whether such determination was "objectively unreasonable." *Williams*, 529 U.S. at 409, 120 S.Ct. 1495; *see also Sellan v. Kuhlman*, 261 F.3d 303, 315 (2d Cir.2001). The *Rodriguez* court noted that although "some increment of incorrectness beyond error is required" in order to grant a federal habeas application, that increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Rodriguez*, 439 F.3d at 73 (internal quotation omitted) (citing *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir.2000)).

### B. *Substance of Gillis' Claims*

#### 1. *Proof of Gillis' Mental Disease or Defect*

Petitioner initially argues in his supporting memorandum of law that he established at trial that he suffered from a mental disease or defect at the time of the shooting, and that therefore his convictions challenged herein must be reversed. Supporting Mem. at 11–18.

#### i. *Clearly Established Supreme Court Precedent*

■ It is clear that states are entitled to define both the crimes and defenses that govern its citizens. *Clark v. Arizona*, —— U.S. ——, 126 S.Ct. 2709, 2719–20, 165 L.Ed.2d 842 (2006) (citing *Patterson v. New York*, 432 U.S. 197, 210, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977)) (other citation omitted). Additionally, in reviewing habeas claims that relate to the sufficiency of evidence, the Supreme Court has instructed courts to consider the evidence adduced at trial in the light most favorable to the prosecution, and to draw all inferences in its favor. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

#### ii. *Contrary to, or Unreasonable Application of, Clearly Established Supreme Court Precedent*

Under New York penal law:

[I]t is an affirmative defense that when the defendant engaged in the proscribed conduct, he lacked criminal responsibility by reason of mental disease or defect. Such lack of criminal responsibility means that at the time of such conduct, as a result of mental disease or defect, he lacked substantial capacity to know or appreciate either: 1. The nature and consequences of such conduct; or 2. That such conduct was wrong.

*See* N.Y. Penal Law § 40.15; *see, e.g.*, Brown v. Walker, 275 F.Supp.2d 343, 350 (E.D.N.Y.2003) (citing N.Y. Penal Law § 40.15).

In support his claim that he established at trial that he suffered from such a mental disease or defect so as to require an acquittal, Gillis argues that "[a]ll of the witnesses testified that Petitioner had

been, at the time of the offense, acting in an irrational manner." Supporting Mem. at 12. Petitioner notes that prosecution witnesses testified that on the day of the incident, he was found naked underneath a porch holding a shotgun, Supporting Mem. at 12, and that when he was thereafter brought to Albany Medical Center: i) his stomach was pumped because he had swallowed three bullets; ii) he was admitted to that facility's psychiatric unit; and iii) medical personnel determined that he had recently ingested "two psychotic substances; phencyclide [*sic*][5] and cocaine." Supporting Mem. at 12–13. Petitioner argues that the evidence adduced at trial conclusively established that he "lacked any substantial capacity to appreciate his conduct was wrong at the time this crime occurred," but that he was nevertheless wrongfully found "guilty of intentional assault." Supporting Mem. at 13. Specifically, he contends that:

> [D]uring this criminal occur[e]nce Petitioner had been under the influence of (2) psychotic substances. From the point when Petitioner consumed said substances, and up until the time Petitioner was apprehended by Albany Police, he lacked knowledge sufficient enough to know or appreciate the nature and consequences of his conduct.

Supporting Mem. at 13.

■ On appeal, Gillis' counsel noted that Dr. Henry Camperlengo, a psychia-

trist, was the sole expert witness called by either side who testified about petitioner's mental state at the time of the crimes.[6] Specifically, appellate counsel noted that:

> The only expert to take the stand was Henry Camperlengo, a psychiatrist called by the defense. He stated the following opinion:
>
> > My opinion is that [Gillis] was in the throes of a drug-induced psychosis at the time of this incident, alleged crime, and reasoning from that, that he did not have the capacity to know right from wrong. That's my opinion.

*See* App. Br. at 11 (citing Trial Tr. at 630). In further support of his request that the Appellate Division reverse Gillis' convictions, appellate counsel cited the testimony of prosecution witness Sergeant Turley, who testified that on July 7, 1995, Gillis refused to drop his weapon despite repeated orders by Sergeant Turley to do so. *See* App. Br. at 15 (citing Trial Tr. at 184–86). Counsel then summarized the proof regarding Gillis' mental disease or defect as follows:

> Starting [*sic*] your clothes on fire because they were cursing you, while your wife and child were in the building two floors above, ingesting live rounds of ammunition, hiding naked under a porch adjacent to your home, with a rifle; firing on persons you had never seen be-

---

5. It appears as though Gillis claims he had ingested Phen*cyclidine* at that time. According to the website maintained by the National Institute on Drug Abuse:

> PCP (phencyclidine) was developed in the 1950s as an intravenous anesthetic. Its use in humans was discontinued in 1965, because patients often became agitated, delusional, and irrational while recovering from its anesthetic effects. PCP is illegally manufactured in laboratories and is sold on the street by such names as angel dust, ozone, wack, and rocket fuel....

*See* http://www.nida.nih.gov/Infofacts/PCP. tml.

6. Since petitioner has not cited specific trial testimony in support of this ground for relief, this Court may properly look to Gillis' appellate brief in order to determine the factual underpinnings of this claim. *See Carter v. McGinnis*, No. 01–CV–655, 2005 WL 1868882, at *8 (W.D.N.Y. Aug.2, 2005) (where petitioner's submissions do not provide adequate information relating to habeas claims, federal courts may look to appellate brief for guidance regarding basis for claim).

fore [together with various acts in which Gillis engaged before July 7, 1995] gives a portrait of sheer insanity. Reasonable people may differ but its beyond reason to find that a man, who sits under a porch naked, looking up at a police officer standing within three to four feet of him, with a service weapon aimed point-blank at him and having been ordered 10–12 times to drop the weapon, and does nothing to comply, is other than insane.

App. Br. at 15.

Although the foregoing may have suggested that Gillis suffered from a mental disease or defect, petitioner neglects to acknowledge that on cross-examination, Dr. Camperlengo admitted that although he determined that Gillis did not have the capacity to know right from wrong on the day of the incident, Dr. Camperlengo nevertheless acknowledged that: i) Gillis knew he was aiming a rifle at people on the day of the shootings (Trial Tr. at 656, 690); ii) petitioner was aware that he "aimed low" when he shot his rifle on that day (Trial Tr. at 691); iii) Gillis knew that the use of drugs "were the cause of all his troubles," and, on the day of the shootings, he had admitted to having ingested his "regular intake" of two or three bags of PCP (Trial Tr. at 665, 669–70); iv) Gillis did not display evidence of "a functional or real psychosis" when he was being examined by Dr. Camperlengo (Trial Tr. at 674); v) the results of a psychiatric test Dr. Camperlengo had administered to Gillis suggested that he "may be exaggerating his symptoms in an attempt to present himself in an unfavorable light;" (Trial Tr. at 675); and vi) offenders who claim lack of responsibility due to drug use and abuse attempt to use one illegal act to justify another (Trial Tr. at 677–78). Additionally, Dr. Camperlengo admitted that when he made his diagnosis of Gillis, he was unaware that: i) less than twenty-four

hours after the shooting, petitioner informed a nurse that he shot two people (Trial Tr. at 662); ii) Gillis had previously informed his parole officer that "he liked guns because guns gave him a sense of power" (Trial Tr. at 672); and iii) soon after the shooting, Gillis expressed a desire to call the police to talk about the incident (Trial Tr. at 662).

 Thus, although Dr. Camperlengo's testimony clearly provided the jury with questions of fact relating to Gillis' claim that he was not criminally responsible for his actions due to his mental state at the time of the crimes, he did not necessarily establish, by a preponderance of the evidence, that at the time of his crimes, petitioner either lacked substantial capacity to know or appreciate the nature and consequences of that conduct; or that he lacked substantial capacity to know or appreciate that such conduct was wrong. Unfortunately for Gillis, where "there is evidence from which the jury could have drawn an inference favorable to the accused but chose not to, the court must 'defer to ... the jury's choice of the competing inferences.'" *Daily v. New York*, 388 F.Supp.2d 238, 248 (S.D.N.Y.2005) (quoting *United States v. Kinney*, 211 F.3d 13, 18 (2d Cir.2000)) (other citation omitted). As the Supreme Court observed in *United States v. Raddatz*, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980):

> The most careful note ... often fail[s] to convey the evidence fully in some of its most important elements.... It cannot give the look or manner of the witness: his hesitation, his doubts, his variations of language, his confidence or precipitancy, his calmness or consideration; ... the dead body of the evidence, without its spirit; which is supplied, when given openly and orally, by the ear and eye of those who receive it.

*Raddatz,* 447 U.S. at 670, 100 S.Ct. 2406 (internal quotation and citation omitted); *see also Keller v. Bennett,* No. 98CV1437, 2002 WL 975306, at *4 (N.D.N.Y. Mar. 21, 2002) (Sharpe, M.J.) ("a habeas court, viewing a cold record, may not properly reassess the jury's finding of credibility concerning the testimony[ of witnesses offered at trial") (citations omitted), *adopted, Keller v. Bennett,* No. 98CV1437 (Dkt. No. 18) (N.D.N.Y. Apr. 15, 2002) (Kahn, J.), *appeal dismissed,* No. 02–2328 (2d Cir. Dec. 12, 2003); *see also Bellezza v. Fischer,* 01CV1445, 2003 WL 21854749, at *15 (E.D.N.Y. Aug.6, 2003) (on collateral review, a federal habeas court "must presume that the jury resolved any questions of credibility in favor of the prosecution") (citing *Vera v. Hanslmaier,* 928 F.Supp. 278, 284 (S.D.N.Y.1996)) (other citations and internal quotation omitted); *Cottrel v. New York,* 259 F.Supp.2d 300, 308 (S.D.N.Y.2003) (citing *Marshall v. Lonberger,* 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983)).

■ In the criminal matter below, the jury was properly instructed as to Gillis' defense that he lacked criminal responsibility for his admitted actions on July 7, 1995 by reason of mental disease or defect. *See* Trial Tr. at 885–95. The jury is ultimately charged with determining whether an individual's claim of insanity has been established in a court of law. *E.g. Connecticut Mut. Life Ins. Co. v. Lathrop,* 111 U.S. 612, 614–15, 4 S.Ct. 533, 28 L.Ed. 536 (1884) ("[w]hether [plaintiff's] strange demeanor ... was the result of a deliberate, conscious purpose to feign insanity ... was a matter peculiarly within the province of the jury to determine"); *United States v. Dupre,* 339 F.Supp.2d 534, 542 (S.D.N.Y.2004) ("expert[ ] [witnesses] are precluded from reaching a definite conclusion about what mental state a defendant actually possessed at the time of the offense because such testimony poses a uniquely heightened danger of intruding on the jury's function"); *see, e.g., Juengain v. Blackburn,* No. CIV.A. 87–712, 1988 WL 106326, at *2 (E.D.La. Oct.7, 1988) ("It was for the jury to accept or reject the medical conclusions ... in determining whether petitioner's defense of insanity should rule the day").

Based upon the foregoing, this Court declines Gillis' invitation to substitute the Court's judgment in place of the jury's determination concerning the issue of whether he lacked criminal responsibility for his actions due to a mental disease or defect, particularly in light of the fact that petitioner's own expert witness provided testimony upon which the jury could have properly found that Gillis did not suffer from any such mental disease or defect. Therefore, the Court denies his first ground for relief.

### 2. Ineffective Assistance of Trial Counsel

In his second claim, Gillis asserts several theories in support of his claim that his trial counsel rendered ineffective assistance. *See* Supporting Mem. at 19–23. Thus, this Court briefly reviews the constitutional provision that mandates that criminal defendants be afforded counsel, together with Supreme Court precedent that addresses the issue of what constitutes ineffective assistance of such counsel.

### i. Clearly Established Supreme Court Precedent

The Sixth Amendment to the United States Constitution provides that: "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const., Amend. VI. To establish a violation of this right to the effective assistance of counsel, a habeas petitioner must show both: i)

that counsel's representation fell below an objective standard of reasonableness, measured in light of the prevailing professional norms; and ii) resulting prejudice, i.e., a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688–90, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) ("the legal principles that govern claims of ineffective assistance of counsel" were established in *Strickland* ).

### ii. *Contrary to, or Unreasonable Application of, Clearly Established Supreme Court Precedent*

Gillis cites various deficiencies with respect to his counsel's performance, all of which he argues supports his request for federal habeas intervention. *See* Supporting Mem. at 19–23. The Court addresses each of these claims *seriatim.*

### a. *Failure to Prepare Expert Witness*

■ Gillis initially claims that his attorney failed to adequately prepare the expert witness called to testify on Gillis' behalf. Supporting Mem. at 19. In a related claim, Gillis argues that his trial attorney "failed to consult with his expert witness." Supporting Mem. at 20.

This aspect of Gillis' petition appears to overlook the fact that defense counsel elicited testimony from Dr. Camperlengo in which that witness declared that on the day of the shootings, Gillis was in a psychotic state, induced by the use of two

drugs, and that, as a result, Gillis "did not have the capacity to know what he was doing was wrong." Trial Tr. at 685. That witness also testified that, in his medical opinion, Gillis could not have formed the intent to hurt anyone on the day of the shootings. Trial Tr. at 685. As noted above, New York's Penal Law provides that a person lacks criminal responsibility for his actions when, at the time of conduct giving rise to the criminal charges, the individual "lacked substantial capacity to know or appreciate" that his conduct was wrong. N.Y. Penal Law § 40.15. The fact that Dr. Camperlengo's testimony clearly supported Gillis' defense that he lacked the mental capacity to appreciate that his conduct was wrong strongly suggests that defense counsel both prepared and consulted with Dr. Camperlengo prior to trial.[7] Furthermore, Dr. Camperlengo's trial testimony clearly buttressed Gillis' claims at trial—and in the present habeas action—that his mental state at the time of the shootings precluded a finding of guilt. Therefore, Gillis has not established that he was prejudiced by his counsel's claimed failure to consult with, or adequately prepare, that witness prior to trial.[8]

### b. *Failure to Review Applicable Laws*

■ Gillis next faults his attorney for failing to "review[ ] the applicable laws [and] compare[ ] [same] to the applicable facts." Supporting Mem. at 20. In a related claim, Gillis argues that his attorney "failed to conduct any relevant research." *Id.*

---

7. Ironically, in support of one of his other grounds for habeas relief, Gillis principally relies upon Dr. Camperlengo's testimony in support of the proposition that defense counsel established that Gillis lacked the mental capacity required to convict him of the crimes charged. *See* Supporting Mem. at 17.

8. The undersigned notes that the Appellate Division stated in its decision affirming Gillis' conviction that "the record reveal[ed] a valiant effort to establish [Gillis'] lack of criminal responsibility." *Gillis*, 281 A.D.2d at 699, 721 N.Y.S.2d 690.

However, Gillis has wholly failed to provide any facts that support these claims. Furthermore, since petitioner has consistently admitted that he engaged in the acts that gave rise to the criminal charges brought against him, *e.g.*, Supporting Mem. at 12 ("[t]he evidence shows that Petitioner shot Ms. Mallery and Fire Lieutenant, Cook, in their left leg[s]"), the only legal basis for an acquittal on those charges would have been proof that petitioner lacked the intent and/or mental capacity to commit the crimes charged. The proof that counsel adduced at trial indicates that counsel was well aware of what he was required to prove under New York law to obtain a verdict favorable to the defense at trial. As noted above, Dr. Camperlengo's testimony dovetailed with the language in New York's penal law which gave rise to petitioner's affirmative defense to the criminal charges based upon his alleged mental disease or defect. *Compare* Trial Tr. at 685 *with* N.Y. Penal Law § 40.15. Additionally, defense counsel necessarily researched New York law regarding the above-referenced defenses; the trial court instructed the jury, as requested by defense counsel, that Gillis could be excused from his criminal conduct if it determined that Gillis' actions on July 7, 1995 were caused by his mental disease or defect. *See* Trial Tr. at 890; *see generally* Trial Tr. at 885–95.

Thus, Gillis has not established, in any way, that his counsel failed to review "applicable laws," or perform appropriate legal research, prior to presenting his defense to the charges against Gillis. Nor has he demonstrated that his counsel failed to elicit testimony from witnesses at Gillis' trial that supported the defenses to the charges against him.

### c. *Failure to Request "Underlying Studies"*

██ Petitioner next asserts that his trial attorney failed to "request copies of the underlying studies relied on in situations dealing with defendants who consumed multiple psychotic substances." Supporting Mem. at 20.

However, Gillis has not referred to, by name, any of the "underlying studies" he now argues his attorney wrongfully failed to request, or identified the individuals from whom such studies should have purportedly been requested. Nor does it appear to this Court that such "studies" are part of the state court record provided to the Court.[9]

██ The federal habeas petitioner bears the burden of proving that his constitutional rights were violated in the state court proceeding. *See Whitaker v. Meachum*, 123 F.3d 714, 716 (2d Cir.1997) (citing *Walker v. Johnston*, 312 U.S. 275, 286, 61 S.Ct. 574, 85 L.Ed. 830 (1941)) (petitioner has the burden of "sustaining his allegations by a preponderance of evidence" on collateral review) (other citations omitted); *Frazier v. New York*, 187 F.Supp.2d 102, 108 (S.D.N.Y.2002) (citation omitted). Petitioner's failure to provide this Court with the "underlying studies" upon which this aspect of his habeas petition is based represents a failure on his part to shoulder his burden of proof. *E.g., United States. ex rel. Johnson v. Tally*, 47 F.Supp.2d 943, 953–54 (N.D.Ill.1999) (petitioner's failure to provide facts in support of habeas claim renders claim unreviewable by federal district court); *Banks v. New York State Dept. of Correctional Services*, No. 01 CIV. 3985, 2001 WL 1448612, at *2 (S.D.N.Y.

---

**9.** Although appellate counsel argued that Gillis' trial counsel was ineffective in a number of respects, such counsel never appears to have claimed that trial counsel failed to request copies of the "underlying studies" to which petitioner now refers.

Nov 15, 2001) ("a petition may be dismissed if it contains only vague or conclusory allegations") (citation omitted); *United States. ex rel. Walls v. DeTella,* No. 94 C 6749, 1997 WL 534287 (N.D.Ill. Aug.19, 1997) (denying habeas claim where petitioner failed to "identif[y] any facts supporting . . . claim in his habeas petition").

### d. *Deficiencies Relating to Prosecution's Expert Witness*

■ Petitioner next faults trial counsel in that he failed to contact and interview the prosecution's expert witness prior to trial, or "make a legitimate protest" when the trial court denied counsel's purported request to call the prosecution's expert witness as a defense witness. Supporting Mem. at 21.

Initially, this Court notes that this claim is factually flawed. Specifically, although Gillis claims that the prosecutor called an expert witness to testify at petitioner's criminal trial, the record reflects that the only expert witness who testified at Gillis' trial was Dr. Camperlengo, who, as noted above, testified on behalf of Gillis. *See, e.g.,* App. Br. at 11 ("[t]he only expert to take the stand was Henry Camperlengo, a psychiatrist called by the defense"); *see generally* Trial Tr. Moreover, the trial court denied the prosecution's request to call an expert witness on rebuttal in part due to defense counsel's argument that the prosecutor could not properly call any rebuttal witness. *See* Trial Tr. at 700–06. Since the county court precluded the prosecutor from calling a rebuttal expert witness, defense counsel never requested permission to call that witness in Gillis' defense to the charges against him. *E.g.* Trial Tr. at 706–08 (after trial court denied prosecutor's request to call rebuttal witness, court advises jury that proof in case is closed). Therefore, petitioner's argument that counsel failed to adequately

object to the trial court's denial of counsel's request to question that witness after he testified for the prosecution, Supporting Mem. at 21, is based upon the critically flawed premises that: 1) such witness testified for the prosecution; and 2) defense counsel requested permission to ask any questions of that witness.

Since the prosecution was not permitted to call its expert witness in rebuttal, Gillis cannot possibly establish that he was prejudiced by the fact that his trial attorney failed to contact that witness before trial "to compare the findings of his own expert witness to the findings of the prosecutions [*sic* ]." Supporting Mem. at 21.

### e. *Evidence of Gillis' Psychological History*

■ Gillis next argues that "[t]he most crucial of counsel's failures" at trial concerned the fact that his counsel failed to:

produc[e] documentary evidence reflecting upon petitioner's psychological past . . . which could have demonstrated to the jury why Petitioner may have acted irrationally, and why he was not criminally liable for the crimes charged. Crucial to Petitioner's defense was Petitioner's condition at the time of birth (fetal alcohol syndrome). The potential importance of having the jury hear this evidence went to the defense of mental disease or defect and was obviously important.

Supporting Mem. at 22.

He further argues that:

[i]t is perfectly reasonable to find that the jury, had they been presented with the relevant psychological facts, past and present, would have likely accepted Petitioner's defense that he was mentally diseased or defected.

*Id.*

However, Gillis has wholly failed to discuss, in any detail, the type of "documentary evidence" he now claims his attorney

wrongfully failed to utilize in his defense to the charges against Gillis. Specifically, petitioner has not cited any "documentary evidence" that is part of the state court record below, or submitted to this Court any such evidence, that supports this aspect of his ineffective assistance claim. Thus, this aspect of Gillis' ineffectiveness claim requests that this Court speculate that his counsel rendered constitutionally ineffective assistance because he failed to utilize "documentary evidence" which petitioner has failed to provide to the Court.[10]

 Unfortunately for Gillis, federal district courts cannot grant habeas relief based upon unsubstantiated surmise, opinion or speculation. *Wood v. Bartholomew,* 516 U.S. 1, 8, 116 S.Ct. 7, 133 L.Ed.2d 1 (1995) (federal courts may not grant "habeas relief on the basis of little more than speculation with slight support"); *Youngblood v. Conway,* 426 F.Supp.2d 107, 125 (W.D.N.Y.2006) (because petitioner's claim was "based on nothing more than mere speculation, it cannot provide a basis for habeas relief"); *see also Williams v. Burge,* No. 02–CV–0695, 2005 WL 2179423, at *16 (N.D.N.Y. Aug. 15, 2005) (Peebles, M.J.), *adopted Williams v. Burge,* No. 02–CV–0695, Dkt. No. 35 (N.D.N.Y. Dec. 7, 2005) (Hurd, D.J.); *Jones v. O'Keefe,* No. 99 Civ.12279, 2000 WL 1290595, at *5 (S.D.N.Y. Sept.12, 2000) (citations omitted); *Osinoiki v. Riley,* CV–90–2097, 1990 WL 152540, at *3 (E.D.N.Y. Sept.28, 1990) (denying petition for writ of habeas corpus, where, *inter alia,* two of petitioner's bases for relief were based on "nothing more than rank speculation"); *Franza v. Stinson,* 58 F.Supp.2d 124, 154 (S.D.N.Y.1999).

It is clear to this Court that petitioner has submitted nothing short of pure surmise, in the state courts as well as in the present matter, to establish this aspect of his ineffectiveness claim.[11]

In sum, this Court has considered the various theories offered by Gillis in support of his habeas ground that alleges that his trial attorney rendered ineffective assistance. The undersigned finds that Gillis has not established either: a) that any of the claimed deficiencies of counsel were the result of objectively unreasonable conduct on the part of Gillis' trial attorney; or b) that he was prejudiced, in any way, by the allegedly objectively unreasonable conduct cited by Gillis. He has therefore *a fortiori* failed to establish that the Third Department's denial of this aspect of his appeal, *Gillis,* 281 A.D.2d at 699, 721 N.Y.S.2d 690, is either contrary to, or represents an unreasonable application of, *Strickland* and its progeny. Therefore, the undersigned denies and dismisses his second ground for habeas relief.

### 3. *Sufficiency of Evidence*

In his final habeas claim, Gillis asserts that his convictions for the crimes of first and second degree assault were "legally insufficient" because the prosecutor failed to establish that Gillis intended to commit those offenses. Supporting Mem. at 24.

### i. *Clearly Established Supreme Court Precedent*

 The Due Process Clause of the Fourteenth Amendment protects a defen-

---

**10.** Indeed, petitioner himself appears to concede that this aspect of his claim rests on conjecture; he argues that had evidence of his suffering from fetal alcohol syndrome "been presented [to the jury], *and if it succeeded,* Petitioner *could have* received a lesser sentence." Supporting Mem. at 22 (emphasis added).

**11.** The Appellate Division's characterization of defense counsel's efforts to establish Gillis' lack of criminal responsibility for his admitted actions discussed *ante* at n. 8 casts serious doubt on petitioner's claim that testimony regarding the fact that he suffered from fetal alcohol syndrome as a child was "crucial" to Gillis' defense to the charges.

236

dant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to establish the crime with which the defendant is charged. *See Fiore v. White*, 531 U.S. 225, 228–29, 121 S.Ct. 712, 148 L.Ed.2d 629 (2001); *Jackson*, 443 U.S. at 315, 99 S.Ct. 2781; *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). An inquiry into whether there was sufficient evidence adduced at trial to support a conviction "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). A habeas petitioner claiming that there was insufficient evidence supporting the conviction is only entitled to relief under 28 U.S.C. § 2254 if it is found "that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 324, 99 S.Ct. 2781; *Schlup v. Delo*, 513 U.S. 298, 323 n. 38, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). The reviewing court is required to consider the evidence in the light most favorable to the prosecution, and draw all inferences in its favor. *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781. Thus, federal courts are to determine "whether the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt." *United States v. Powell*, 469 U.S. 57, 67, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984) (citing *Jackson*) (other citations omitted).

### ii. Contrary to, or Unreasonable Application of, Relevant Supreme Court Precedent

A habeas petitioner bears a "very heavy burden" when seeking to invalidate a conviction based upon a claim of insufficient evidence. *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir.2002) (citing *Quira-

ma v. Michele*, 983 F.2d 12, 14 (2d Cir. 1993)); *see also Clark v. Irvin*, 844 F.Supp. 899, 904 (N.D.N.Y.1994) (Hurd, M.J.). Specifically, a habeas court is to determine whether:

the jury, drawing reasonable inferences from the evidence, may fairly and logically have concluded that the defendant was guilty beyond a reasonable doubt. In making this determination, [the court] must view the evidence in the light most favorable to the government, and construe all permissible inferences in its favor.

*Ferguson v. Walker*, No. 00CIV1356, 2001 WL 869615, at *4 & n. 4 (S.D.N.Y. Aug. 2, 2001) (Peck, M.J.) (quoting *United States v. Carson*, 702 F.2d 351, 361 (2d Cir.1983)) (citations omitted), *adopted, Ferguson v. Walker*, No. 00CIV1356, 2002 WL 31246533 (S.D.N.Y. Oct. 7, 2002).

The Supreme Court has instructed federal habeas courts charged with considering a challenge based upon the sufficiency of evidence to review relevant state law to determine the elements of a crime. *See Jackson*, 443 U.S. at 324, 99 S.Ct. 2781; *Ponnapula*, 297 F.3d at 179. Therefore, in considering Gillis' habeas claim that the prosecution failed to prove the first and second degree assault charges, this Court must review the elements the prosecutor was required to prove as to these charges.

### a. First Degree Assault Conviction

Gillis was found guilty of the first degree assault of Laura Mallery. Trial Tr. at 955.

"New York Penal Law § 120.10(1) provides that a person is guilty of first degree assault when, '[w]ith intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or dangerous instrument.'" *Jackson v.*

*Lacy,* 74 F.Supp.2d 173, 178 (N.D.N.Y. 1999) (McAvoy, C.J.).

In support of the aspect of his petition that challenges the sufficiency of evidence relating to this conviction, Gillis alleges that insufficient evidence was adduced at trial to establish that he intended to cause physical injury to Mallery on July 7, 1995 because at the time of that shooting he:

> was under the influence of two psychotic substances, and ... lacked sufficient enough knowledge to know what he had done. Therefore, there had been no intent on the part of Petitioner to cause any physical injury.

Supporting Mem. at 25.

However, this claim fails to acknowledge that the prosecutor established that on July 7, 1995, Gillis knew that he was firing his shotgun at people and that at the time he did so, he aimed his gun "low." Trial Tr. at 656, 690–91. Since Gillis was under a porch at the time he fired his rifle, and he therefore could only injure someone if he aimed his rifle low, that evidence strongly suggests intentional conduct on the part of Gillis. Thus, the jury could have reasonably concluded that such conduct on the part of Gillis demonstrated that his actions were intentional. *E.g. People v. Brooks,* 278 A.D.2d 501, 501, 718 N.Y.S.2d 402 (2d Dept.2000) (where the defendant "aimed his gun in the direction of the complainant and fired," "no reasonable view of the evidence supports the conclusion that the defendant intended to cause the complainant anything less than 'serious physical injury ... by means of a deadly weapon'"); *State v. Hruby,* No. A–95–616, 1996 WL 80581, at *3 (Neb. App.1996) ("aiming a gun [is] an intentional act"); *Swanigan v. State,* 499 N.E.2d 732, 735 (Ind.1986) ("[c]ircumstantial evi-

dence that Appellant aimed a gun and shot one man, and then aimed the gun at and shot the victim, is sufficient to establish intent") (citation omitted). Since Gillis' intentional conduct caused Mallery the serious physical injuries discussed more fully below, this aspect of his petition is without substance.

**2. *Second Degree Assault Convictions***

Gillis was convicted of the second degree assault of Mallery and Cook as a result of his conduct on July 7, 1995, as well as the second degree assault of Police Officers Torrain and Hurley, both of whom were assaulted by Gillis as they attempted to arrest him on that day.

**1) *Convictions Relating to Cook and Mallery*** [12]

A person is guilty of assault in the second degree in New York when, *inter alia,* "[w]ith intent to cause serious physical injury to another person, he causes such injury to such person or to a third person." *See* N.Y. Penal L. § 120.05; *see also Swindell v. New York State Dept. of Environmental Conservation,* 371 F.Supp.2d 172, 182 (N.D.N.Y.2005) (McCurn, S.J.). In New York, "serious physical injury" is defined as "physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ." *See* N.Y. Penal Law § 10.00[10]; *see e.g. People v. Kern,* 75 N.Y.2d 638, 658, 555 N.Y.S.2d 647, 554 N.E.2d 1235 (1990) (citing N.Y. Penal Law § 10.00[10]).

For the reasons discussed above in conjunction with Gillis' first degree assault

---

**12.** The second degree assault charges relating to Mallery and Cook were the lesser included offenses of the attempted murder charges re-

lating to those victims. *See* Trial Tr. at 845–47, 851–53, 953–55.

conviction relating to Mallery, the Court finds that the jury could have reasonably concluded that petitioner's conduct on July 7, 1995 was intentional as to both Mallery and Cook.

■ Moreover, it is beyond cavil that Mallery sustained serious physical injuries as a result of petitioner's conduct. She was hospitalized for ten days as a result of her gunshot wound (which shattered her femur), a rod and pins were placed in her leg as a result of her injuries, she was forced to undergo a bone graft on her leg and was eventually placed on a medical disability after she could no longer work at her job with the New York Department of Education due to her injury. Trial Tr. at 127–38.

■ As to the nature and extent of the injury sustained by Cook, the undersigned notes that the prosecution established that the bullet which Gillis shot at Cook entered and traveled through his left leg. Trial Tr. at 119–20. Such gunshot wound required medical care and caused Cook to suffer sleepless nights, together with intermittent pain, for over one year. Trial Tr. at 120–21. Thus, the undersigned finds that a rational trier of fact could have found that the above described gunshot wound sustained by Cook amounted to a serious physical injury.

### 2) *Conviction Relating to Officer Torrain*

Gillis was charged with, and convicted of, the second degree assault of Officer Torrain. *See* Indictment, Count Seven; *see also* Trial Tr. at 955–56. In charging the jury as to the elements of that crime, the county court noted that the prosecution was required to prove, beyond a reasonable doubt, that Gillis, "[w]ith intent to prevent a ... police officer ... from performing a lawful duty ... cause[d] physical injury to such ... police officer." *See*

N.Y. Penal L. § 120.05; Trial Tr. at 869–70; *see also Moscoso v. City of New York*, 92 F.Supp.2d 310, 314 (S.D.N.Y.2000).

■ Officer Torrain testified that he suffered a laceration to his left elbow while he was attempting to arrest Gillis, and that such injury was treated by medical personnel at St. Peter's Hospital in Albany, New York. Trial Tr. at 200–01. Petitioner did not offer any evidence at trial which cast any doubt on the fact that Officer Torrain sustained an injury caused by Gillis, or that such injury came about when Officer Torrain was attempting to arrest petitioner. Thus, ample evidence was adduced at trial which established his guilt of the second degree assault of Officer Torrain.

### 3) *Conviction Relating to Officer Turley*

■ The final aspect of petitioner's evidence insufficiency claim relates to his second degree assault conviction relating to Officer Turley. *See* Indictment, Count Eight; *see also* Trial Tr. at 956. As with the charge brought against petitioner relating to Officer Torrain, the trial court charged the jury that to convict Gillis of the second degree assault charge relating to Officer Turley, the prosecutor was required to prove, beyond a reasonable doubt, that Gillis caused physical injury to Officer Turley while Gillis intended to prevent Officer Turley from performing his lawful duty. *See, e.g.,* Trial Tr. at 870–73.

Officer Turley testified that as he was pulling the rifle out of petitioner's hands on the day of the shootings, Gillis started biting the officer. Trial Tr. at 178–79. The injuries Officer Turley sustained at that time were treated at Albany Medical Center, and resulted in the officer being permanently scarred on his left leg. Trial Tr. at 179–80. During his cross-examination of Officer Turley, defense counsel nev-

er disputed Officer Turley's testimony that he sustained those injuries while he was attempting to arrest Gillis. Trial Tr. at 187–92. The undersigned accordingly concludes that there was more than sufficient evidence presented at trial which established his guilt of the second degree assault of Officer Turley.

In sum, the undersigned finds that the evidence in the underlying criminal matter, taken as a whole, is plainly sufficient to surpass the relatively modest hurdle posed by *Jackson* as to each of the convictions upon which Gillis now asserts his evidence insufficiency claims. This Court therefore concludes that Gillis has wholly failed to establish that the Third Department's denial of this aspect of his appeal, *see Gillis*, 281 A.D.2d at 700, 721 N.Y.S.2d 690, is either contrary to, or an unreasonable application of, *Jackson* and its progeny. Thus, the Court denies Gillis' third and final claim for relief.

### III. *Certificate of Appealability*

Finally, the undersigned notes that 28 U.S.C. § 2253(c)(1) provides in relevant part that:

Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from -

(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court .... [13]

A Certificate of Appealability may only be issued "if the applicant has made a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Since petitioner has failed to make such a showing herein, the Court declines to issue any Certificate of Appealability in this matter.

13. Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed "unless a circuit justice or a

**WHEREFORE**, based upon the above, it is hereby

**ORDERED**, that the petition filed by Gillis in this matter is **DENIED** and **DISMISSED**, and it is further

**ORDERED**, that the state court records be returned directly to the Attorney General at the conclusion of these proceedings (including any appeal of this Memorandum–Decision and Order filed by any party), and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order upon the parties by regular or electronic mail.

circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." *See* Fed.R.App.P. 22(b).